JAMES M. OLDRIDGE, Respondent, v. ELMER E. SUTTON, Appellant.

Kansas City Court of Appeals, May 29, 1911.

1. **SALES: Deposit of Proceeds: Claim of Seller.** S, desiring to assist M, agreed with a bank that if it would cash the latter's checks in the purchase of live stock, he would pay whatever M, might owe the bank at the wind-up. M, then began buying stock by checking on the bank and selling it and depositing the proceeds with the bank. This continued for several months when the matter was closed and M was found to be behind with the bank in the sum of $220, which S paid. But while the account was yet open, M bought some sheep from O on a cash sale, and gave him a check for $60 for them, and then sold the sheep and deposited the proceeds with the bank to the credit of his account. O did not present the check for payment for four weeks, which was two weeks after the account was closed, and S had paid the balance. O then sued S for the amount of the check. *Held,* that he did not have a cause of action.

2. ———: ———: **Cash on Delivery: Title: Check: Delay.**
Though title will not pass to the buyer of personal property on
a cash sale, yet if the seller delivers the property and accepts
a check as an order for the money, but does not present it for
four weeks, and the buyer sells the property, the seller has no
claim on the proceeds in the hands of third parties.

Appeal from Daviess Circuit Court.—*Hon. Arch B.*
*Davis,* Judge.

REVERSED.

*Hewitt & Hewitt* for appellant.

*Boyd Dudley* and *J. A. Selby* for respondent.

ELLISON, J.—Plaintiff's action is for the amount
of the proceeds of thirteen head of sheep. He recovered
judgment in the trial court.

The case is based on the following facts: Defendant
was a friend of one Mallory, who was a man who had
been engaged in buying and selling live stock, but had
become insolvent. Defendant desired to start Mallory
in business again, and without the latter's knowledge,
made arrangements with the "Bank of Weatherby" that
the bank should cash Mallory's checks, and he would be
responsible for all overdraft at the close of the account.
The bank agreed, extended the credit to defendant, and
defendant sent Mallory a book of blank checks, inform-
ing him of what he had done for him. Mallory then (the
16th of April, 1907) began to buy stock and ship to Kan-
sas City for sale, checking on the bank in payment, and
depositing proceeds of sales with the bank. He con-
tinued this until the 15th of August, when, defendant,
thinking he was not prospering, stopped the business,
had the account at the bank cast up, and finding Mallory
in debt $220, paid it and squared the account. But while
Mallory was still prosecuting the business and while the
account with the bank was still open, Mallory, on the
20th of July, bought thirteen head of sheep from plain-

tiff for sixty dollars and gave him a check for that sum on the bank. Mallory shipped the sheep to Kansas City, where they were sold, and he deposited the proceeds in the bank. Plaintiff carried this check until the 6th of August, when he deposited it for collection with another bank in a town near-by and it was not presented to the Bank of Weatherby until after the 15th of August when the account had been closed as stated. Payment was refused. The question for decision is, do these facts give plaintiff a cause of action against defendant? We are of the opinion they do not.

Defendant's contract to pay the bank what might be due to it from Mallory by reason of the latter making the account with it, was a contract to which the plaintiff was a stranger, and of which he had no knowledge. But plaintiff had advanced this theory in support of his right to a judgment against defendant: He says that the sheep he sold to Mallory were sold by the latter and the proceeds deposited with the bank as a credit to his account, and that when defendant settled Mallory's affairs with the bank he received the benefit of this credit; that is, the bank's claim against him was reduced by that amount. We think that was a mere incident in business which did not make a legal claim. Plaintiff had no claim, or lien, on the proceeds of the sale of the sheep which he sold to Mallory and when Mallory received the money for which he sold them, and deposited it in the bank, it lost all identity and severed all connection with plaintiff. Money passes current, and a person receiving it does not have to inquire from whence it came. [Case v. Hammond Packing Co., 105 Mo. App. 168; Stephens v. Board of Education, 79 N. Y. 183; Hatch v. Bank, 147 N. Y. 184, 191; Justh v. Bank, 56 N. Y. 478; Smith v. Bank, 107 Iowa, 620.]

Mallory was defendant's debtor for all sums defendant had to pay on his account, and if Mallory had not put the proceeds of the sheep in the bank, but, after finding his indebtedness to defendant, had paid it directly to

him, it would not have given plaintiff any claim. Plaintiff has taken a position the effect of which is as though he had a lien on the money for which Mallory sold the sheep. We think it ill-founded.

Plaintiff advances another theory. It is that he sold the sheep for cash; that the check was accepted as an order and not as payment, and since it was not paid, no title passed. This cannot be allowed. While he may have sold for cash, he failed to collect the cash, or to attempt to collect it. He allowed Mallory to become the apparent owner by delivering the sheep to him and not presenting his check for near a month after delivery.

The judgment is reversed. All concur.