## Farmers and Manufacturers National Bank v. Pocono Manor Ass'n

*Fox & Fox* and *Erdman & Williams*, for plaintiff.

*Francis R. Taylor, Harry B. Watton* and *C. Raymond Bensinger*, for defendant.

SHULL, P. J., March 7, 1932.—The following are facts upon which both plaintiff and defendant agreed:

1. Farmers and Manufacturers National Bank is a banking corporation organized under the laws of the United States and having its place of business in Poughkeepsie, N. Y.

2. Pocono Manor Association is a corporation organized under the laws of Pennsylvania and having its principal place of business in Monroe County, Pa.

3. On March 9, 1931, the Farmers and Manufacturers National Bank caused to be issued out of the Court of Common Pleas of Monroe County a writ of summons in assumpsit directed against Pocono Manor Association based upon the herein agreed facts, and said writ, together with the statement of claim, was duly and legally served upon the defendant, Pocono Manor Association.

4. On June 26, 1930, one Grace Atkinson presented at plaintiff bank a check drawn by her on the York County Trust Company of York Village, Me., payable to "cash," in the amount of $2540.92. Plaintiff, in good faith and without notice of any fraud and after having had Grace Atkinson identified, paid over to her the amount of the check so drawn in negotiable bills and cash.

5. Said Grace Atkinson delivered the said bills and cash to an agent of the Western Union Telegraph Company in Poughkeepsie, N. Y., with directions to wire an order to the Philadelphia office of the Western Union Telegraph Company to pay over a like amount to Francis R. Taylor, Esq., attorney for the Pocono Manor Association.

6. In accordance with the directions so given to the agent of the Western Union Telegraph Company by the said Grace Atkinson, the agent of the Western Union Company in Philadelphia, Pa., delivered, on June 26, 1930, to Francis R. Taylor, Esq., the sum of $2540.92.

7. The said Francis R. Taylor, Esq., on June 26, 1930, paid over unto Pocono Manor Association the said sum of $2540.92, in good faith, without any knowledge of the fraudulent representation of the said Grace Atkinson, and the said money was received by the Pocono Manor Association in good faith and without any knowledge of fraud as aforesaid, in payment of the indebtedness as hereinafter set forth.

8. The payment of the said sum of $2540.92 made by the said Grace Atkinson to Francis R. Taylor, Esq., attorney for Pocono Manor Association, was on account of unsecured antecedent indebtedness owing at the time of such payment by Grace Atkinson to Pocono Manor Association, as follows: On open account for money advanced, supplies furnished and services rendered by Pocono Manor Association to Grace Atkinson, $2540.92; for arrearages of rent, $8000.

9. On June 30, 1930, the check presented by the said Grace Atkinson at said plaintiff bank and upon which payment had been made in good faith and without notice of any fraud was protested for want of an account, and on July 1, 1930, immediately after the receipt of the notification of the protest, plaintiff notified the defendant by mail and telephone of the fraudulent conduct of the said Grace Atkinson and demanded the return of the money so paid.

10. Between June 26, 1930, the date the money was paid by the plaintiff to said Grace Atkinson and forwarded by her to the attorney for the defendant company, and July 1, 1930, upon which date defendant was notified by the plaintiff of the fraudulent procurement of the money, there was no such change in the assets of the said Grace Atkinson as would materially prejudice the claim of Pocono Manor Association if it should have then proceeded directly against the said Grace Atkinson for the collection of the unsecured antecedent debt.

Conceding that the defendant had no actual or constructive knowledge or notice that the money which it received from Grace Atkinson was obtained by her misrepresentations to plaintiff, is the defendant nevertheless liable to the

plaintiff for the amount of such money transferred to it in part payment of her preëxisting debt to the defendant?

The question confronting us is whether in equity and good conscience the plaintiff in this case, who was admittedly defrauded of this money, should recover from this defendant.

If the property here involved were anything but currency, we would have no question in our mind as to the right, under the facts as they here exist, of this plaintiff to recover against this defendant, but with money all of the equities must be considered in determining whether in equity and good conscience a recovery could be had in this case, and that requires consideration of the equities as they may relate to the conduct of general business and the effect on the public at large, as well as the equities that may relate to the parties to this action.

Under our government there are conditions under which the rights, the equities and perhaps even exact justice to the individual must give way to the public good, and in numerous instances the law and the construction of the law, where currency is involved, has been and is on a different basis than the law as it relates to other personal property. And indeed, this is necessary for the public good. Currency is different from almost any other type of personal property, in that, generally speaking, it has no earmarks. That the world may progress, a medium of exchange is an imperative necessity, and that medium of exchange must be as free and clear of limitations or conditions affecting the passing of it from one to the other as it is possible for human ingenuity to make it, taking into consideration only common honesty. Consequently, as we view it, to place such limitation on the passing of money in the ordinary course of business as would place the payee upon inquiry at his peril as to the title of the payor would so restrict or limit any workable system of credit as to practically eliminate credits from any business transaction.

It is true that in the case at bar, at the time of receiving this money, the defendant did not part with anything of value, for it is admitted that it was paid to it on account of a preëxisting debt of Grace Atkinson. It is likewise true that, should this plaintiff be entitled under the law to recover from this defendant, it would necessarily follow that the indebtedness of Grace Atkinson to the defendant would in no way be canceled or affected by the passing of this money, but it does not necessarily follow that this defendant would not be injured by this transaction; it does not follow that this defendant would be placed in the same position it was at the time or immediately before the payment was made to it. In the ordinary course of business one may readily make payments by reason of cash on hand that would not otherwise be made, calculating all the time that after the payment there is still sufficient cash on hand to meet the known and ordinary demands of the business. And again, by reason of the cash on hand, one engaged in business may readily make commitments which must be met and to meet which he relies upon this cash.

Were we to determine this question in favor of plaintiff's contention, then everyone accepting cash in payment of an antecedent debt would, as we have said, be put on inquiry at his peril as to payor's title to the money; and, as was said in the case of Stephens v. Board of Education, 79 N. Y. 183, 187: "It is absolutely necessary for practical business transactions that the payee of money in due course of business shall not be put upon inquiry at his peril as to the title of the payor."

The money in this case was paid in the due course of business and, unless dire confusion, loss and injury is to be suffered and submitted to in the transaction of general business, it must be the law that the title to money passes by delivery

from hand to hand, and that when accepted in good faith the payee is without obligation to inquire into or examine the payor's title to it.

And now, March 7, 1932, on the case stated here submitted, judgment is entered for defendant. , From C. C. Shull, Stroudsburg, Pa.